UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                                                      :

In re:                                                  :

                                                        :    Chapter 7

    SERGE LOUIS,                                  :

                                                        :    Case No.: 22-40992-jmm

                          Debtor.    :

                                                       :
---------------------------------------------------------- X
                                                       :

MIKITA ROYAL,                                :

                     Appellant,    :    **MEMORANDUM DECISION AND**

                                                       :    **ORDER**

                 - against –            :

                                                  :    25-cv-0614 (BMC)

DAVID J. DOYAGA, SR., Solely as Chapter 7  :
Trustee of the Estate of Serge Louis,

                                                     :

                     Appellee.     :
----------------------------------------------------------X

**COGAN**, District Judge.

       This is an appeal from an Order of the bankruptcy court granting the motion of a Chapter 7 Trustee, the Appellee, to sell certain property which the debtor held with Appellant as joint tenants. The primary issue on this appeal is whether, under 11 U.S.C. § 363(h), the bankruptcy court properly held that the benefit to the estate from the sale outweighed the detriment to the Appellant. Considering that Appellant was subject to multiple sanction Orders that prohibited her from introducing much evidence about her contributions to the maintenance of the property; that, even without regard to preclusion, she produced no evidence of her contribution beyond conclusory assertions; and that she failed to submit a counter-statement of material fact to Appellee's statement under Local Rule 7056-1, which was well-supported by the evidence, there

was no reversible error in the bankruptcy court's ruling. The bankruptcy court's Order granting summary judgment to the Appellee is therefore AFFIRMED.

## BACKGROUND

### I.     Procedural Background

This appeal arises out of an adversary proceeding brought by Appellee, the Chapter 7 Trustee (the "Trustee") of the debtor, Serge Louis. The Trustee's adversary complaint alleged that the debtor and Appellant, Mikita Royal, were joint tenants (they had never married) on a residential property in Farmingdale, Long Island (the "Property"), and that Louis' interest in the Property was at least 50%. The Trustee sought permission of the bankruptcy court pursuant to 11 U.S.C. § 363(h) to sell the property in its entirety, and to distribute 50% of the proceeds to Louis' creditors and 50% to Royal.

The complaint further alleged that the property was encumbered by a mortgage of $297,076.36, but that the value of the property was $450,000 to $550,000, so that a sale of the property would allow for a distribution of the equity to both Louis' creditors and Royal. Royal's defenses appeared to be (1) Louis had not made any financial contribution towards acquiring or maintaining the Property; and (2) under 11 U.S.C. § 363(h)(3), the detriment to Royal from a sale of the Property would outweigh the benefit to Louis' creditors.

The matter came before the bankruptcy court on the parties' cross-motions for summary judgment. By that time, Royal and her counsel had already been the subject of two sanctions orders for failure to respond to discovery. Royal's counsel was ultimately sanctioned $11,433.88. The bankruptcy court's second order imposing sanctions (the "Second Sanctions Order") prevented Royal from "introducing documentary evidence in support of her defenses except those documents produced to Plaintiff consisting of Defendant's checkbooks and the

documents produced via electronic mail on February 26, 2024 and March 11, 2024." The referenced documents she produced were partially illegible.

## II. The Bankruptcy Court's Decision

After argument on the parties' cross-motions for summary judgment, the bankruptcy court read its oral decision into the record. It relied in part on the fact that Royal's attorney had failed to respond to the Trustee's Local Bankruptcy Rule 7056-1 Statement of Undisputed Facts, nor had he submitted an opposing statement on Royal's cross-motion. But it was not just the unopposed Statement alone upon which the bankruptcy court relied. Each time the bankruptcy court noted the unopposed Rule 7056-1 Statement, it referenced the evidence cited in the Statement to support the particular numbered paragraph.

Turning to the first issue of whether Louis had contributed money to the acquisition or maintenance of the Property, the bankruptcy court found that the Trustee had made a *prima facie* showing that Louis had made such a contribution. The evidence for this was Royal's direct admission of this in her deposition. The deposition also contradicted an affidavit signed by Louis which stated that Louis had never lived on the Property – Royal testified at her deposition that he had lived there for five years after it was purchased.

The bankruptcy court similarly found that Royal had failed to rebut the Trustee's *prima facie* showing of the estate's interest in the property. In addition to not being able to contradict her deposition, the bankruptcy court noted that if the case went to trial, Royal would not be able to come up with new evidence of a lack of contribution by Louis, since she had not produced any prior to summary judgment. Nor could she, considering the preclusion order.

Turning to the issue of balancing the benefit to Louis' creditors against the detriment to Royal, the bankruptcy court first found, based on an unopposed affidavit from the Trustee's

3

expert, that there was equity in the property well above the amount of the existing mortgage. Thus, the benefit to the estate from a sale was clear. It rejected Royal's argument that she had paid all amounts necessary to purchase and maintain the Property as unsupported by the evidence she had submitted and that she was foreclosed from submitting further evidence, if there was any, by the Second Sanctions Order.

The court rejected Royal's argument that the equity would have to be used to pay her back for purchasing and maintaining the Property, as the documentary evidence she submitted did not state the extent or amount of any contributions made by her. The court noted that it should have been easy enough for Royal to produce monthly bank statements showing that she had always made the monthly mortgage payments and maintenance and the source of the funds for such payments (that is, showing that Louis had not made payments indirectly through Royal), but she had not done so.

In considering the factors used to measure detriment to a co-owner in a § 363 sale, the bankruptcy court found it undisputed that there were no minor children living on the Property, nor was it used for rental income. Finally, the court rejected Royal's contention that she would have to be paid an additional amount out of the sales proceeds pursuant to her homestead exemption. Rather, the court found whatever proceeds Royal received from the sale, the homestead exemption would protect those proceeds from *her* creditors up to the amount protected by the homestead exemption.

Having found that the Trustee had proven that the benefit to the estate outweighed the detriment to Royal, the bankruptcy court granted the Trustee's motion for summary judgment and denied Royal's. The court further found that since Royal had failed to prove a contribution in purchasing and maintaining the Property in excess of Louis' contribution, the "default rule"

4

from the sale of property owned by joint tenants would apply, *i.e.*, the proceeds would be distributed 50% to Louis' creditors and 50% to Royal.[1]

This appeal followed.

## DISCUSSION

### I.     Standard of Review

The Trustee's brief, surprisingly, does not address the standard for this Court's review of the bankruptcy court's decision. Royal asserts that since the adversary proceeding was resolved on cross-motions for summary judgment, this Court "must review the issues of law in a *de novo* manner . . . as there are no factual disputes."

However, Royal's entire argument is premised on the bankruptcy court's determination that it improperly weighed the benefit to the estate against the detriment to her interest under 11 U.S.C. § 363(h)(3). That is a mixed question of law and fact, and when the bankruptcy court resolves it based on undisputed facts – as Royal herself concedes it did here – its decision is reviewed for abuse of discretion. See Lynch v. Vaccaro, 566 B.R. 290, 299 (E.D.N.Y. 2017), aff'd sub nom., Frank v. Lynch, 728 F. App'x 71 (2d Cir. 2018) (quoting 23 Jefferson St. LLC v. 636 Assets, Inc., No. 14-cv-7150, 2015 WL 5037343, at *3 (E.D.N.Y. Aug. 25, 2015)). This is consistent with the general principle that the bankruptcy court's exercise of its discretion is reviewed under that standard. See In re Teligent Servs., Inc., 372 B.R. 594, 599 (S.D.N.Y. 2007) (citations omitted).

---

[1] The bankruptcy court did not enter a final judgment under Bankruptcy Rule 7058. The documents bringing up this appeal consist of the transcript containing the courts' oral ruling, and a written order entered thereafter that granted the relief the Trustee had requested. Under these circumstances, I can treat the written order as a final judgment for purposes of Bankruptcy Rule 7058. See Roberts v. Bennaceur, 658 F. App'x 611, 618-19 (2d Cir. 2016).

Yet, ironically, despite Royal's assertion that "there are no factual disputes," her argument on appeal is that the bankruptcy court erroneously found that Louis had contributed to the purchase price for the Property and that she had failed to offer admissible evidence that she was entirely responsible for making the mortgage payments and upkeep on the Property. Indeed, the majority of Royal's brief is page after page of excerpts from her deposition in which she asserts her own contributions. Although she failed to substantiate these assertions through documentary evidence in response to the Trustee's discovery requests, had the bankruptcy court accepted her testimony, it might well have created a disputed issue of fact, or at least subjected the bankruptcy court's factual findings to the standard of clearly erroneous review. See In re Park Ave. Garage, LLC, No. 09-cv-6176, 2009 WL 10698487, at *2 (S.D.N.Y. Dec. 23, 2009), aff'd, 403 F. App'x 555 (2d Cir. 2010) (quotation and citation omitted); In re 189-30 Realty Corp., No. 06-cv-1977, 2006 WL 2583743, at *2 (E.D.N.Y. Sept. 7, 2006) (citations omitted).

However, there is no mention in either Royal's opening or reply briefs on appeal as to the Second Sanctions Order, which prohibited her from submitting the proof upon which she relied and still relies on appeal. Indeed, Royal has not challenged the Second Sanctions Order on appeal – she has simply ignored it. Nor is there any mention in her briefs of Local Bankruptcy Rule 7056-1(d), which provides that if a party does not dispute a movant's statement of undisputed facts, those facts are deemed undisputed to the extent they are supported by evidence in the record. As noted above, the bankruptcy court cited to the evidence in support of each statement in the undisputed Local Bankruptcy Rule 7056-1 statement upon which it relied.

This Court will therefore review the bankruptcy court's factual predicate for its determination under the clearly erroneous standard, and its determination under 11 U.S.C. §

6

363(h) for abuse of discretion. By doing so, this will constitute the *de novo* review generally applicable to appeals from orders on motions for summary judgment.

## II. Analysis

### A. The § 363 Sale

Section 363 of the Bankruptcy Code governs the use, sale, or lease of the debtor's property. Subsection (h) sets forth the conditions under which a bankruptcy trustee may sell property that is jointly held by the debtor and a non-debtor:

> [T]he trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if –
>
> (1) partition in kind of such property among the estate and such co-owners is impracticable;
>
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>
> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
>
> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h). Both in the bankruptcy court and on the instant appeal, only factor (3) is at issue – whether the benefit to Louis' estate outweighed the detriment to Royal.

Hemmed in by the preclusive effect of the Second Sanctions Order (which, again, is not challenged on appeal) and Royal's failure to respond to the Trustee's Local Bankruptcy Rule 7056-1 statement, the bankruptcy court's determination was well within its discretion. Indeed, the statement in the Rule 7056-1 Statement upon which the bankruptcy court relied was an

7

admission made by Royal in her deposition – that Louis had contributed money to the down payment for the purchase of the Property, thus establishing the estate's interest.

From there, the Second Sanctions Order took over. It ordered that Royal was "precluded from introducing documentary evidence in support of her defenses except those documents produced to Plaintiff consisting of Defendant's checkbooks and the documents produced via electronic mail on February 26, 2024 and March 1, 2024." She therefore could not offer the monthly bank statements that possibly might have substantiated her claim that she always made the mortgage payments (and, in any event, she did not even try). There is no explanation on the record why these were not produced during discovery or at any other time.

As the bankruptcy court recognized, the exercise of the court's discretion in considering a § 363(h) sale invokes a burden-shifting process. At the first step, the debtor or Trustee must establish that the estate will benefit from the sale. At that point, the burden shifts to the non-debtor joint owner to show a detriment from the sale of the property. If the joint owner meets that burden, then the debtor or Trustee must show that the benefit to the estate is greater than the detriment to the joint owner. See Geltzer v. Bevilacqua (In re Schulter), 585 B.R. 670, 678-79 (Bankr. E.D.N.Y. 2018).

It was not only the Second Sanctions Order and the failure to oppose the Rule 7056-1 statement that hamstrung Royal, but the fact that she submitted no other evidence to show an economic or non-economic detriment. In In re Persky, 893 F.2d 15, 21 (2d Cir. 1989), the Second Circuit offered some examples of what such detriment might be when spouses hold property as tenants in the entirety – "actuarial calculations of the life expectancies of the spouses, respective contributions to the purchase price of the home, tax exemptions available on the

8

property, prospects for acquiring a new home, special physical or mental handicaps, and minor children living at home."

None of these factors applied here.  Indeed, Louis and Royal had never married, so unlike Persky, there is no suggestion that Royal would have any survivor's right to Louis' interest upon his death.  Similarly, and unlike Persky, Louis and Royal do not hold the Property as tenants by the entirety, but as joint tenants, so that, again, Louis' interest would not revert to Royal upon his death – it would simply be part of his decedent's estate, subject to his creditors' claims, as it now is in this bankruptcy proceeding.  Moreover, as the bankruptcy court observed, there are no minor children residing on the Property.

In the absence of evidence of economic detriment to Royal from a sale, Royal quotes extensively from caselaw holding that a court must also consider non-economic detriment to the joint owner, see, e.g., Persky, 893 F.2d at 20-21, and criticizes the bankruptcy court for not considering such detriment.  That is inaccurate.  The bankruptcy court expressly considered the fact that Royal's children were adults and thus minors would not lose their residence.  Moreover, any further consideration of the non-economic impact on Royal was because Royal put in no evidence of such detriment.  There was no evidence, for example, of an attempt to find an alternative residence, or how the cost of alternative housing might be feasible or infeasible given her financial circumstances.  Her counsel, instead, seems to have simply assumed that having to find a new place to live made it self-evident that the detriment to Royal outweighed the benefit to Louis' creditors.  And he expected the bankruptcy court to simply accept her assertion that she had made all the mortgage payments, notwithstanding the Second Sanctions Order which precluded her from offering evidence that she had (evidence which, again, she hadn't offered anyway).

9

That left Royal with nothing to say about non-economic loss except to imply that the loss of her residence would be inconvenient. The contention is not nearly sufficient. If the inconvenience of relocating were itself a sufficient detriment to the joint owner, then a § 363(h) sale of residential property could almost never occur. The bankruptcy court's balance of the equities under § 363(h)(3) was well supported by the evidence submitted by the Trustee and the lack of evidence submitted by Royal.

Finally, Royal relied on an affidavit of Louis, filed by Royal's attorney, in which Louis denied having made any financial contribution towards the down payment on or maintenance of the Property. The bankruptcy court properly rejected this as contrary to Royal's failure to deny the contrary allegation in the Rule 7056-1 Statement, which, in turn, was based on her express statement to the contrary at her deposition.[2]

With the paucity of evidence of Royal's contribution to the Property or her economic or non-economic harm, and the admission of Louis' contribution, this Court cannot find that the bankruptcy court abused its discretion in balancing the benefit to the estate against the detriment to Royal in favor of the Trustee.

B. **Allocation of Sales Proceeds**

Royal makes two points to argue that the sales proceeds should not be allocated 50/50 to the estate and to her, but that she should get some unspecified amount of those proceeds off the top (after payment of priority and secured claims).

---

[2] The bankruptcy court also rejected Louis' affidavit on the ground that it was hearsay. This was incorrect in the context of a motion for summary judgment, as Louis would have the ability to testify as to whether or not he made a contribution, and affidavits can be used to bring admissible evidence before the court. See Pruitt v. Metcalf & Eddy Inc., No. 03-cv-4780, 2006 WL 39621, at *8 (S.D.N.Y. Jan. 6, 2006) (citations omitted). However, in light of Royal's admission in her deposition that Louis had contributed towards the down payment, that he had lived on the Property for five years, and her failure to controvert the Trustee's Rule 7056-1 Statement, the error is harmless.

First, she argues that since she "made all of the payments related to the Real Property . . . for approximately 18 years, without a single contribution by the Debtor Louis and the Trustee has not proven otherwise," she should get all of those proceeds repaid out of the sale. However, because of her failure to cooperate in discovery, resulting in the Second Sanctions Order, and her additional failure to submit any bank account records showing that she made the payments she claims that she made, the bankruptcy court had no ability to calculate, let alone apply, such a credit. (This is assuming, *arguendo*, that any amounts paid were not offset by the benefit to her of having sole occupancy for 18 years.) Royal contends that "the Trustee has not proven otherwise," but the Trustee could hardly prove a negative.

The Trustee served the discovery requests that, had Royal complied, would have shown any economic contributions for which Royal claims she should receive a credit off the top. Responses to those requests also would have shown where Royal was getting any funds for payments that she made to keep up the property, whether from Louis or anyone else. Royal's lawyer repeatedly ignored these requests or produced inadequate documentation to allow the bankruptcy court to make any findings about them, resulting in the Second Sanctions Order. It was not the Trustee's burden to disprove any contributions by Royal because she was the one seeking more than a 50% recovery. See In re Dixon, 140 B.R. 945, 946 n.1 (Bankr. W.D.N.Y. 1992) (bankruptcy courts "divide the proceeds equally between the estate and the non-debtor spouse under 11 U.S.C. § 363(j)," but will "set [this] rule of convenience aside for [anyone] who wishes to undertake the task of contesting these matters").

Royal's final point is that the bankruptcy court should have ordered that upon any sale of the Property, instead of dividing the proceeds 50/50 between the estate and Royal, Royal should have received a $204,825 payment off the top (after payment of priority claims) to recognize her

11

homestead exemption under New York law. But the homestead exemption applies only to those owing money judgments – in other words, debtors – a status that Royal currently does not have. See, e.g., Fido's Fences, Inc. v. Bordonaro, No. 15-cv-3025, 2015 WL 7738020, at *2 (E.D.N.Y. Nov. 30, 2015) ("a *debtor* may exempt property from the bankruptcy estate pursuant to New York's homestead exemption" (emphasis added) (citations omitted)).

The homestead exemption does not reduce the amounts distributable to Louis' creditors.

## CONCLUSION

The Order of the bankruptcy court is AFFIRMED.[3]

**SO ORDERED.**

*Brian M. Cogan*
U.S.D.J.

Dated: Brooklyn, New York
       June 24, 2025

---

[3] Royal had filed a motion for a "preliminary injunction pending appeal." That motion is denied as moot in light of this decision.